IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| RICK NULPH, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:21-cv-423 (MTT) |
| | ) |
| HOUSTON HEALTHCARE SYSTEM, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

Defendant Houston Healthcare System, Inc., ("HHC") moves to dismiss Plaintiff Rick Nulph, M.D.'s complaint. Doc. 4. For the reasons discussed below, Nulph is granted leave to amend his complaint to further plead allegations of Emergency Medical Treatment and Active Labor Act ("EMTALA") violations, and HHC's motion (Doc. 4) is **DENIED**.

## I.   BACKGROUND

From 2017 to 2021, Dr. Rick Nulph was a physician at and director of the emergency department at Perry Hospital, which is operated by HHC. Doc. 1 ¶ 17. Nulph worked at Perry Hospital through placement by Houston County Emergency Group, LLC, a subsidiary of ApolloMD. *Id.* ¶ 19. ApolloMD contracted with HHC to provide emergency department services by outsourcing physicians to hospitals. *Id.* ¶ 20.

At Perry Hospital, patients who do not have an existing relationship with a physician at the hospital are designated "city call" patients. *Id.* ¶ 22. In May 2021, HHC implemented a policy providing that all "city call" patients who reported to the Perry Hospital emergency department were to be transferred to other larger medical facilities. *Id.* ¶¶ 28-29. If a "city call" patient refused to consent to transfer, the patient was to be discharged with a notation in their record indicating that they left against medical advice. *Id.* ¶ 31. Nulph contends that most "city call" patients were uninsured, which caused HHC to incur significant expenses. *Id.* ¶¶ 31-32. Nulph believes HHC implemented its transfer policy to avoid the costs associated with uninsured "city call" patients. *Id.* ¶ 39.

After the policy went into effect, Nulph witnessed multiple patient transfers from Perry Hospital to other facilities in a manner that he believes did not comply with EMTALA. *Id.* ¶ 45. Nulph reported these violations internally to the Chief of Staff of Perry Hospital and the Chief Medical Officer of HHC. *Id.* ¶ 46. On May 24, 2021, Nulph filed a formal complaint with the Office of Inspector General ("OIG") for the Department of Health and Human Services. *Id.* ¶ 48. After filing the formal complaint, Nulph told another doctor what he had done, and that doctor told HHC leadership. *Id.* ¶¶ 49-50. The next day, Nulph was told through ApolloMD that "the shit [was] hitting the fan" at Perry Hospital, and the President of HHC wanted Nulph out of the hospital. *Id.* ¶ 51. Nulph was immediately removed from his position as emergency department director. *Id.* ¶¶ 52-53. On November 19, 2021, Nulph filed a complaint alleging that HHC retaliated against him for acting as a whistleblower pursuant to EMTALA. Doc. 1; 42 U.S.C. § 1395dd. HHC moved to dismiss on January 18, 2022. Doc. 4.

## II.     STANDARD

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing Fed. R. Civ. P. 12(b)(6)).  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp*., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted).  The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555.  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

## III.     DISCUSSION

HHC moves to dismiss on three grounds: (1) Nulph's EMTALA violations are insufficiently plead; (2) Nulph was not an employee of HHC, as required by EMTALA's whistleblower protections clause; and (3) Nulph's breach of legal duty claim pursuant to O.C.G.A. § 51-1-6 fails because Nulph cannot establish that he was entitled to whistleblower protections under EMTALA.  Doc. 4-1 at 19, 21, 24.  Each of these arguments will be addressed in turn.

*1.  The Sufficiency of Nulph's EMTALA Violation Allegations*

EMTALA requires any hospital with an emergency department to provide any individual who reports to the emergency department requesting an examination or treatment with an appropriate medical screening to determine whether they have an emergency medical condition.  42 U.S.C. § 1395dd(a).  The hospital may not delay screening to inquire about the patient's insurance status or ability to pay.  42 U.S.C. § 1395dd(h).  If the individual is found to be suffering from an emergency medical condition, EMTALA requires the hospital to either (a) provide further examination and treatment within the hospital to stabilize the condition or (b) arrange for the transfer of the patient to another facility in accordance with statute guidelines.  42 U.S.C. § 1395dd(b)(1).  EMTALA contains a whistleblower protections clause, which provides:

> A participating hospital may not penalize or take adverse action against a qualified medical person described in subsection (c)(1)(A)(iii) or a physician because the person or physician refuses to authorize the transfer of an individual with an emergency medical condition that has not been stabilized or against any hospital employee because the employee reports a violation of a requirement of this section.

42 U.S.C. § 1395dd(i).

Nulph's complaint asserts that he was a hospital employee who saw and reported violations of EMTALA.  Specifically, Nulph claims he "witnessed multiple patients, including uninsured and indigent patients, who were suffering with 'emergency medical conditions' being transferred from Perry Hospital to other facilities in a manner that he reasonably and in good faith believed did not comply with EMTALA's provisions."  Doc. 1 ¶ 45.  HHC contends "plaintiffs must 'plead facts that describe a violation of EMTALA and subsequent action by [them] in response to state a claim under EMTALA's whistleblower protections.'"  Doc. 4-1 at 18 (quoting *David v. BayCare Health Systems, Inc.*, 2019 WL 6842085 *3 (M.D. Fla. Dec. 16, 2019)).  According to HHC, "the complaint does not allege *how* HHC's 'city call' policy at Perry Hospital violated EMTALA," and is a "mere conclusory allegation that directly tracks the language of the statute."  Doc. 4-1 at 19, 23 (quoting *David*, 2019 WL 6842085 at *3).

Although Nulph's complaint likely plausibly alleges EMTALA violations, he requests leave to buttress those allegations.  Doc. 7 at 20.  Accordingly, Nulph is granted leave to amend his complaint to provide more detailed allegations of EMTALA violations.

2.  *Nulph's Employee Status*

Next, HHC argues that Nulph cannot seek relief under the whistleblower protections clause of EMTALA because he is not an employee of HHC, but rather an employee of ApolloMD. Doc. 4-1 at 11.  Specifically, HHC contends that because Nulph's employee contract was with ApolloMD, and neither HHC nor Perry Hospital paid Nulph's W-2 wages, Nulph was not an employee of HHC.  *Id*.  EMTALA does not define

"employee" and there is no binding authority establishing how to assess employee status for the purposes of an EMTALA whistleblower claim.[1]  See 42 U.S.C. §1395dd(e)

However, two alleged facts significantly undermine the contention that Nulph was not an employee for the purposes of EMTALA: (1) Nulph was the director of HHC's emergency department, and (2) Nulph claims that he was removed from his position at the direction of HHC's president.[2]  Doc. 1 ¶¶ 59, 50-52.  As the emergency department director, Nulph was presumably intimately involved with the department and exercised a degree of control over its functions.  And according to Nulph's allegations, his employment was subject to the decisions of HHC's leadership.  Id. ¶ 50-52.  These facts suggest that Nulph functioned as an employee within the scope of the protections EMTALA affords whistleblowers.  At this stage, the Court cannot conclude as a matter of law that Nulph was not a hospital employee for the purposes of EMTALA.

    3.  *Nulph's Breach of Legal Duty Claim Pursuant to O.C.G.A. § 51-1-6*

HHC's final argument is that Nulph's O.C.G.A. § 51-1-6 claim fails because he cannot establish that he is entitled to whistleblower protections under EMTALA.  Doc. 4-1 at 23.  HHC argues that O.C.G.A. § 51-1-6 "does not confer a separate cause of action" but instead authorizes the recovery of damages for the breach of an existing legal duty.  Id. at 24 (quoting *Parris v. State Farm. Mut. Auto. Ins. Co.*, 229 Ga. App. 522, 524, 494 S.E.2d 244, 246 (1997)).  Thus, a breach of legal duty claim pursuant to O.C.G.A. § 51-1-6 can only operate in conjunction with another statute that imposes a

---

[1] There are, however, cases from other district courts in which plaintiffs have been found to be hospital employees for the purposes of EMTALA despite their lack of W-2 employee status.  See *Muzaffar v. Aurora Health Care S. Lakes, Inc.*, 985 F. Supp. 2d 875, 878 (E.D. Wis. 2013); *Zawislak v. Mem. Herman Hosp. Sys.*, No. H-11-1335, 2011 WL 5082422 *4 (S.D. Tex. Oct. 26, 2011).

[2] HHC contends there were other reasons for Nulph's termination, but those contentions rely on facts outside of the complaint and beyond the scope of a motion to dismiss.  Doc. 4-1 at 14.

legal duty.  *City of Buford v. Ward*, 212 Ga. App. 752, 755, 443 S.E.2d 279, 283 (1994). But because HHC has not yet established that Nulph is not entitled to EMTALA whistleblower protections, HHC's stated basis for dismissing Nulph's O.C.G.A. § 51-1-6 claim fails.

### IV.    CONCLUSION

For the reasons discussed above, Nulph is granted leave to amend his complaint **by no later than May 23, 2022**, and HHC's motion to dismiss is **DENIED.**

**SO ORDERED**, this 2nd day of May, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
